UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NEHEMIAH D. ROLLE,

                                    Plaintiff,

                v.                                                    9:04-CV-0312
                                                                     (LEK/GHL)

PAUL GARCIA, Individually and in Official
Capacity as Deputy Superintendent for Programs
at Mt. McGregor Correctional Facility,

                                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

NEHEMIAH D. ROLLE
  Plaintiff, *Pro Se*
402 W. 41 Street
New York, NY 10036

HON. ANDREW M. CUOMO                       CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York      Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

**REPORT-RECOMMENDATION**

_____This matter has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

N.D.N.Y. 72.3(c).  In this *pro se* civil rights complaint brought under 42 U.S.C. § 1983,

Nehemiah D. Rolle ("Plaintiff") alleges that Mt. McGregor Correctional Facility ("Mt. McGregor

C.F.") Deputy Superintendent of Programs Paul Garcia ("Defendant") violated Plaintiff's rights

under the First, Fifth, Eighth, Thirteenth and Fourteenth Amendments by improperly conducting

a Tier III disciplinary hearing on charges against Plaintiff at Mt. McGregor C.F. on January 6,

2004.  (Dkt. No. 6.)  Currently before the Court is Defendant's motion for summary judgment.

(Dkt. No. 43.)  For the reasons discussed below, I recommend that Defendant's motion for

summary judgment be granted and that Plaintiff's Amended Complaint be dismissed with

prejudice.  In the alternative, I recommend that Plaintiff's *in forma pauperis* status be revoked as

having been improvidently granted due to Plaintiff's lack of candor with the Court, and that his

Amended Complaint be dismissed without prejudice to refiling.

I.      **BACKGROUND**

     A.      **Plaintiff's Amended Complaint**

In his Amended Complaint, Plaintiff sets forth the following factual allegations.  At 7:00

a.m. on December 30, 2003, Plaintiff (who was an inmate at Mt. McGregor C.F.) reported for

work at a toolshed at Mt. McGregor C.F.[1]  Plaintiff stood outside in the cold for approximately

30 minutes, waiting for his work crew officer to arrive.[2]

At approximately 7:30 a.m., the work crew officer--Correctional Officer ("C.O.") D.W.

Flanders--arrived.[3]  At that time, Plaintiff informed C.O. Flanders that he was "feeling very ill

with severe chest pains[,] . . . difficulty breathing, and . . . a lot of pain from ulcers resulting from

[a] skin disease [called] . . . 'eczema-herpeticum-dermatitis.'"[4]  As a result, Plaintiff requested to

---

[1]      (Dkt. No. 6, ¶ 6, subparagraph "1" [Plf.'s Compl.].)

[2]      (Dkt. No. 6, ¶ 6, subparagraph "1" [Plf.'s Compl.].)

[3]      (Dkt. No. 6, ¶ 6, subparagraph "1" [Plf.'s Compl.].)

[4]      (Dkt. No. 6, ¶ 6, subparagraph "1" [Plf.'s Compl.].)

2

be excused from work so that he could go to the infirmary for an emergency sick call.[5]  C.O. Flanders denied Plaintiff's request.[6]

At some point between 7:30 a.m. and 8:15 a.m., Plaintiff began work, which involved sweeping a six-mile stretch of road.[7]  By 8:15 a.m., it had begun to rain.[8]  Plaintiff was not wearing a raincoat.[9]

At approximately 8:45 or 8:50 a.m., an "incident" occurred.[10]  While Plaintiff does not specifically describe the "incident," he does indicate that it involved (1) the arrival on the scene of Correctional Sergeant Allen, (2) one or more attempts by Plaintiff to speak to Sergeant Allen about having to work in the rain without a raincoat, and (3) a subsequent dispute between Plaintiff and C.O. Flanders about whether Plaintiff had taken an unauthorized break from work.[11]

In any event, by 9:30 a.m., C.O. Flanders had indicated his intent to write (and may have even been in the process of writing) Plaintiff a misbehavior report due to the "incident."[12]  At 11:12 a.m. on December 31, 2003, the misbehavior report was served on Plaintiff.[13]  The

---

[5]  (Dkt. No. 6, ¶ 6, subparagraph "1" [Plf.'s Compl.].)

[6]  (Dkt. No. 6, ¶ 6, subparagraph "1" [Plf.'s Compl.].)

[7]  (Dkt. No. 6, ¶ 6, subparagraphs "2" and "21" [Plf.'s Compl.].)

[8]  (Dkt. No. 6, ¶ 6, subparagraphs "18," "20" and "21" [Plf.'s Compl.].)

[9]  (Dkt. No. 6, ¶ 6, subparagraph "18," "20," and "21" [Plf.'s Compl.].)

[10]  (Dkt. No. 6, ¶ 6, subparagraphs "6," "7," "20" [Plf.'s Compl.].)

[11]  (Dkt. No. 6, ¶ 6, subparagraphs "10," "13," "15," "18," "20," and "21" [Plf.'s Compl.].)

[12]  (Dkt. No. 6, ¶ 6, subparagraphs "6" and "7" [Plf.'s Compl.].)

[13]  (Dkt. No. 6, ¶ 6, subparagraph "19" [Plf.'s Compl.].)

misbehavior report charged Plaintiff with (1) leading, organizing or urging his fellow inmates on the work crew to participate in a work stoppage, and (2) refusing a direct order by C.O. Flanders to return to work.[14]

Shortly after 11:30 a.m. on January 6, 2003, Plaintiff attended a disciplinary hearing on these two charges.[15]  Defendant conducted the hearing.[16]  At the hearing, Plaintiff entered a plea of not guilty on both charges, and requested to call as defense witnesses Inmate Horsely (03-R-5065) and Inmate Morales (99-A-1967).[17]  Defendant offered to dismiss the charge of organizing, leading or urging a work stoppage if Plaintiff waived his right to call Inmates Horsely and Morales as witnesses.[18]  Plaintiff agreed to waive his right to call Inmates Horsely and Morales as witnesses with regard to the work-stoppage charge, but refused to waive his right to call those inmates as witnesses with regard to the charge of refusing to obey a direct order.[19]  As a result, Defendant denied Plaintiff's request to call these two inmates as witnesses, falsely stating that those two inmates were not present at Mt. McGregor C.F. at the time of the hearing.[20]  In addition, Defendant refused to permit Plaintiff to "call[,] . . . cross-examine or confront"

---

[14]     (Dkt. No. 6, ¶ 6, subparagraphs "3," "5," "10," "13," and "19" [Plf.'s Compl.].)

[15]     (Dkt. No. 6, ¶ 6, subparagraphs "5," "6," "13," "16," "17," and "23" [Plf.'s Compl.].)

[16]     (Dkt. No. 6, ¶ 6, subparagraphs "5," "6," "8," "13," "17," and "23" [Plf.'s Compl.].)

[17]     (Dkt. No. 6, ¶ 6, subparagraphs "5," "8," "9," and "15" [Plf.'s Compl.].)

[18]     (Dkt. No. 6, ¶ 6, subparagraph "13" [Plf.'s Compl.].)

[19]     (Dkt. No. 6, ¶ 6, subparagraph "13" [Plf.'s Compl.].)

[20]     (Dkt. No. 6, ¶ 6, subparagraphs "5," "8," "10," "11," "14," "15," and "16" [Plf.'s Compl.].)

Sergeant Allen as a witness.[21]

Finally, Plaintiff testified that C.O. Flanders issued the misbehavior report against Plaintiff in retaliation for Plaintiff having filed a grievance against C.O. Flanders on December 30, 2003,[22] as well as five grievances and a federal court civil rights action against fellow corrections officers at Mt. McGregoer C.F. before December 30, 2003.[23]  However, not only did Defendant reject this testimony, he decided to retaliate against Plaintiff for exercising his constitutional rights.[24]

As a result, Defendant found Plaintiff guilty of refusing to obey a direct order to return to work (although he dismissed the charge of organizing, leading or urging a work stoppage).[25] Defendant sentenced Plaintiff to ninety (90) days confinement in the Special Housing Unit ("S.H.U.") with a corresponding loss of good-time credits, recreation, packages, commissary and telephone privileges.[26]

---

[21]      (Dkt. No. 6, ¶ 6, subparagraphs "5" and "7" [Plf.'s Compl.].)

[22]      I cannot help but note that it appears temporally impossible for Plaintiff's alleged grievance against C.O. Flanders to have caused C.O. Flanders' misbehavior report against Plaintiff since C.O. Flanders had indicated an intent to write that report (and indeed may have started writing that report) by approximately 9:30 a.m. on December 30, 2003, while Plaintiff did not leave the work detail (and thus could not have started writing his grievance) until at least 10:30 a.m. on December 30, 2003.  (*See, e.g.*, Dkt. No. 6, ¶ 6, subparagraph "21" [Plf.'s Compl., alleging that he worked until 10:30 a.m.].)

[23]      (Dkt. No. 6, ¶ 6, subparagraphs "4," "17," "19," "20," "23," and "25" [Plf.'s Compl.].)

[24]      (Dkt. No. 6, ¶ 6, subparagraph "26" [Plf.'s Compl.].)

[25]      (Dkt. No. 6, ¶ 6, subparagraphs "8" and "26" [Plf.'s Compl.].)

[26]      (Dkt. No. 6, ¶ 6, subparagraphs "8" and "26" [Plf.'s Compl.].)

**B.    Defendant's Motion for Summary Judgment**

Defendant's motion for summary judgment is based on six grounds: (1) Plaintiff's due

process claims should be dismissed because the Tier III disciplinary decision has never been

reversed; (2) the due process claims should be dismissed because the 76 days that Plaintiff

eventually spent in S.H.U. did not create a liberty interest protected under the Fourteenth

Amendment; (3) Plaintiff's retaliation claims should be dismissed because he failed to grieve

them against Defendant; (4) Plaintiff has failed to adduce any evidence in support of a due

process claim; (5) Plaintiff has failed to adduce any evidence in support of a retaliation claim;

and (6) Plaintiff's claims should be dismissed because Defendant is protected by the doctrine of

qualified immunity.  (Dkt. No. 43, Part 23 [Def.'s Mem. of Law.)

## II.    APPLICABLE LEGAL STANDARD

**A.    Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a

genuine issue of material[27] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party.[28]

However, when the moving party has met its initial burden of establishing the absence of

---

[27]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

[28]    *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

any genuine issue of material fact, the nonmoving party must come forward with "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[29]  The nonmoving party

must do more than "simply show that there is some metaphysical doubt as to the material

facts."[30]  "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."[31]

### B.    Revocation of Plaintiff's Special Status as *Pro Se* Civil Rights Litigant

Imposed over the aforementioned burden-shifting framework is the generous perspective

with which the Court ***generally*** views a *pro se* civil rights plaintiff's papers.[32]  For example,

where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive

motion, ***generally*** the Court must construe the plaintiff's complaint and opposition papers

liberally so as to raise the strongest arguments that they suggest.[33]  Having said that,

"[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a

---

[29]      *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[30]      *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[31]      *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

[32]      *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

[33]      *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

7

motion for summary judgment."[34]

In addition, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[35]   The rationale for this revocation of special status (at least in the Second Circuit) is not that the *pro se* litigant should be punished but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[36]

---

[34]     *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp. 2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[35]     *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

[36]     *See, e.g.*, *Johnson v. Eggersdorf*, 8 Fed. App'x 140 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, M.J., adopting report-recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced. Most often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[37] There is, of course, no formula for determining "How many is too many?" However, if a *pro se* litigant has filed twelve or more actions and/or appeals before the date of the decision in question, he may well be deemed "experienced" so as to jeopardize his special status.[38] Another factor that several courts look at is the quality of the *pro se* litigant's

---

[37]    *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143 (plaintiff at one point had twelve simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (plaintiff at one point had twelve simultaneously pending lawsuits in Northern District alone); *Flynn*, 32 F.3d at 31 (plaintiff at one time had at least thirty simultaneously pending lawsuits); *Frawley*, 2006 WL 1742738, at *3 & n.2 (plaintiff had filed at least twenty actions in current court and five other actions in Southern District of New York); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (plaintiff had filed twenty lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (plaintiff had filed twenty lawsuits in Northern District alone); *Dean*, 204 F.R.D. at 257 (plaintiff at one point had thirty simultaneous pending suits); *Santiago*, 91 F. Supp. 2d at 670 (plaintiff had ten suits pending in district); *McGann*, 1999 WL 173596, at *2, 8-10 (court found seventy-nine reported decisions of cases that plaintiff had filed during previous forty-three years); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (plaintiff had filed seven previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (plaintiff had seven cases pending in district).

[38]    *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Frawley*, 2006 WL 1742738, at *3 & n.2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed at least **twenty** actions in current court and five other actions in Southern District of New York); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in

submissions to the Court (e.g., whether they are typed, cogent, supported by applicable affidavits

and/or memoranda of law, etc).[39]

Here, Plaintiff has filed *nineteen* other actions in federal district courts in the Second

Circuit over an approximate ten-year period.[40]  By my count, he has filed at least *three dozen*

---

Northern District alone); *but* see *McFadden v. Goord*, 04-CV-0799, 2006 WL 2787457, at *1 n.6 (N.D.N.Y. Sept. 26, 2006) (refusing to deny leniency to *pro se* civil rights inmate even where he had filed *thirty* other federal lawsuits since 1995); *Shaheen v. Hollis*, 03-CV-0017, 2005 WL 2179400, at *2 n.4 (N.D.N.Y. Sept. 7, 2005) (refusing to deny leniency to *pro se* civil rights inmate even where he had filed *twenty-two* other federal lawsuits since 1989); *Shaheen v. Filion*, 04-CV-0625, 2006 WL 2792739, at *2 n.4 (N.D.N.Y. Sept. 17, 2006) (refusing to deny leniency to *pro se* civil rights inmate even where he had filed *twenty-one* other federal lawsuits in previous 18 years).

[39]      *See, e.g.*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J., which considered, in deciding whether *pro se* plaintiff should be denied special solicitude, the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.").

[40]      *See Rolle v. Nassau Community College*, 95-CV-0203 (E.D.N.Y.) (civil rights action); *Rolle v. Fanelli*, 96-CV-0585 (E.D.N.Y.) (civil rights action); *Rolle v. N. County*, 99-CV-2587 (E.D.N.Y.) (civil rights action; *Rolle v. DeRiggi*, 00-CV-3872 (E.D.N.Y.) (civil rights action); *Rolle v. Nassau County Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (habeas corpus petition); *Rolle v. Meenan*, 01-CV-2719 (E.D.N.Y.) (prisoner civil rights action); *Rolle v. Cassidy*, 01-CV-3172 (E.D.N.Y.) (prisoner civil rights action); *Rolle v. Honorof*, 01-CV-6667 (E.D.N.Y.) (civil rights action); *Rolle v. Ruskin*, 02-CV-3829 (E.D.N.Y.) (civil rights action); *Rolle v. McCarthy*, 02-CV-4398 (E.D.N.Y.) (civil rights action); *Rolle v. Ort*, 02-CV-4171 (E.D.N.Y.) (civil rights action); *Rolle v. Bolster*, 03-CV-1529 (N.D.N.Y.) (TJM/DEP) (prisoner civil rights action); *Rolle v. LaPerta*, 03-CV-1540 (E.D.N.Y.) (civil rights action); *Rolle v. Kurtzrock*, 03-CV-1789 (E.D.N.Y.) (civil rights action); *Rolle v. Carter*, 03-CV-2039 (E.D.N.Y.) (civil rights action); *Rolle v. Berkowitz*, 03-CV-3535 (E.D.N.Y.) (civil rights action); *Rolle v. Berkowitz*, 03-CV-7120 (S.D.N.Y.) (civil rights action); *Rolle v. Connell*, 05-CV-0991 (N.D.N.Y.) (NAM/RFT) (prisoner civil rights action); *Rolle v. Boyle*, 05-CV-3362 (E.D.N.Y.) (civil rights action).

appeals with the Second Circuit.[41]  His litigation experience is not limited to federal court.[42]  In

addition, the docket sheets in these matters are littered with dispositive motions, including

motions for summary judgment; as a result, Plaintiff has considerable experience responding to

_____

[41]       *See*, *e.g.*, *Rolle v. Garcia*, 04-CV-0312 (N.D.N.Y.) (LEK/GHL) (docket sheet
reflecting filing of mandates of Second Circuit dismissing appeals on 5/23/05 and 8/28/06); *Rolle
v. Ort*, 02-CV-4171 (E.D.N.Y.) (docket sheet reflecting filing of mandates of Second Circuit
dismissing appeals on 11/18/03, 4/22/05, 12/6/05, and 8/22/06); *Rolle v. Connell*, 05-CV-0991
(N.D.N.Y.) (docket sheet reflecting filing of mandate of Second Circuit dismissing appeal on
6/28/06); *Rolle v. Bolster*, 03-CV-1529 (N.D.N.Y.) (docket sheet reflecting filing of mandates of
Second Circuit dismissing appeals on 3/25/05, 3/27/06, and 4/5/06); *Rolle v. Berkowitz*, 03-CV-
7120 (S.D.N.Y.) (docket sheet reflecting filing of mandate of Second Circuit dismissing appeal
on 3/20/06); *Rolle v. Boyle*, 05-CV-3362 (E.D.N.Y.) (docket sheet reflecting filing of notice of
appeal on 11/8/05); *Rolle v. McCarthy*, 02-CV-4398 (E.D.N.Y.) (docket sheet reflecting filing of
mandate of Second Circuit dismissing appeal on 5/3/05, and filing of another notice of appeal on
6/17/05); *Rolle v. LaPera*, 03-CV-1540 (E.D.N.Y.) (docket sheet reflecting filing of two
mandates of Second Circuit dismissing two appeals on 3/3/05); *Rolle v. Nassau County
Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (docket sheet reflecting filing of mandate of
Second Circuit dismissing appeal on 11/5/04, and filing of another notice of appeal on 12/10/04);
*Rolle v. Berkowitz*, 03-CV-3535 (E.D.N.Y.) (docket sheet reflecting filing of mandate of Second
Circuit dismissing appeal on 11/12/04); *Rolle v. Honorof*, 01-CV-6667 (E.D.N.Y.) (docket
sheet reflecting filing of mandate of Second Circuit dismissing appeal on 7/7/03); *Rolle v. Kurtzrock*,
03-CV-1789 (E.D.N.Y.) (docket sheet reflecting filing of mandates of Second Circuit dismissing
appeals on 6/16/04 and 5/11/05);  *Rolle v. Carter*, 03-CV-2039 (E.D.N.Y.) (docket sheet
reflecting filing of two mandates of Second Circuit dismissing two appeals on 10/1/04); *Rolle v.
Cassidy*, 01-CV-3172 (E.D.N.Y.) (docket sheet reflecting filing of two mandates of Second
Circuit dismissing two appeals on 6/27/03); *Rolle v. Nassau County*, 99-CV-2587 (E.D.N.Y.)
(docket sheet reflecting filing of mandates of Second Circuit dismissing appeals on 8/11/00,
11/6/00, 12/27/01, 6/17/02, 10/25/02); *Rolle v. DeRiggi*, 00-CV-3872 (E.D.N.Y.) (docket sheet
reflecting filing of mandate of Second Circuit dismissing appeal on 9/25/00 and order dismissing
appeal on 5/21/01); *Rolle v. Fanelli*, 96-CV-0585 (E.D.N.Y.) (docket sheet reflecting filing of
mandate of Second Circuit dismissing appeal on 3/15/96); *Rolle v. Nassau Community College*,
95-CV-0203 (E.D.N.Y.) (docket sheet reflecting filing of mandate of Second Circuit dismissing
appeal on 3/4/96, and filing of another notice of appeal on 1/19/99); *see also Rolle v. Honorof*, 64
Fed. App'x 324 (2d Cir. 2003); *Rolle v. Cassidy*, 64 Fed. App'x 322 (2d Cir. 2003); *Rolle v.
Cassidy*, 01-0174, 2001 U.S. App. LEXIS 27419 (2d Cir. Dec. 21, 2001); *Rolle v. Nassau
County*, No. 01-0090, 2001 U.S. App. LEXIS 27416 (2d Cir. Dec. 21, 2001).

[42]       *See*, *e.g.*, *Rolle v. McKinney*, 786 N.Y.S.2d 815 (N.Y. 2004); *In re Rolle*, 687
N.Y.S.2d 181 (N.Y. App. Div., 3d Dept. 1999).

motions for summary judgment.[43]  He has even filed a few such motions.[44]  Perhaps as a result of

his considerable experience, his papers in the aforementioned actions–as well as the current

action–have been fairly good, often being typed, coherent, and accompanied by affidavits and

memoranda of law, etc.  As a result I find that the circumstances warrant revoking Plaintiff's

special status as a *pro se* litigant in this action.

## C.      Statement of Material Facts

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken

as true to the extent those facts are supported by the evidence in the record[45] and are not

---

[43]      *See, e.g.*, *Rolle v. Nassau Community College*, 95-CV-0203 (E.D.N.Y.) (Plaintiff filed documents in opposition to defendants' motion for summary judgment on 4/30/98 and 5/5/98); *Rolle v. Fanelli*, 96-CV-0585 (E.D.N.Y.) (Plaintiff filed documents in opposition to defendants' motion for summary judgment on 4/30/98 and 5/5/98); *Rolle v. N. County*, 99-CV-2587 (E.D.N.Y.) (Plaintiff filed documents in opposition to defendants' motion for summary judgment on 9/20/99); *Rolle v. Nassau County Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (Plaintiff filed documents in opposition to defendants' motion for summary judgment on 12/20/02).

[44]      *See, e.g.*, *Rolle v. N. County*, 99-CV-2587 (E.D.N.Y.) (Plaintiff filed cross-motion for summary judgment on 9/20/99); *Rolle v. Nassau County Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (Plaintiff filed cross-motion for summary judgment on 12/20/02).

[45]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

specifically controverted by the non-movant.[46]  Once a movant has filed a Rule 7.1 Statement, the

opposing party must file a Rule 7.1 Response.[47]  This Rule 7.1 Response "shall mirror the

movant's [Rule 7.1 Statement] by admitting and/or denying each of the movant's assertions in

matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where

the factual issue arises."[48]  A district court has no duty to perform an independent review of the

record to find proof of a factual dispute.[49]  In the event the district court chooses to conduct such

an independent review of the record, any verified complaint filed by the plaintiff should be

treated as an affidavit.[50]  (Here, I note that Plaintiff's Amended Complaint is verified.)

However, to be sufficient to create a factual issue, an affidavit (or verified complaint)

---

[46]    *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material
Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[47]    *See* N.D.N.Y. L.R. 7.1(a)(3).

[48]    (*Id.*)

[49]    *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)
("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an
obligation on a district court to perform an independent review of the record to find proof of a
factual dispute.") (citations omitted); *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App.
LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-
13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v.
Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy,
J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295
(N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v.
Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[50]    *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A]
verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary
judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff
"was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert.
denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified
complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

must, among other things, be based "on personal knowledge."[51]  An affidavit (or verified

complaint) is not based on personal knowledge if, for example, it is based on mere "information

and belief" or hearsay.[52]  In addition, such an affidavit (or verified complaint) must not be

conclusory.[53]  An affidavit (or verified complaint) is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[54]  Moreover, "[a]n affidavit must not present

---

[51]      Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[52]      *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[53]      *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[54]      *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute

legal arguments."[55]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[56]

---

between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[55]     N.D.N.Y. L.R. 7.1(a)(2).

[56]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. App'x 383 (2d Cir. 2005) (unreported decision).

Here, I note that Defendant has filed a proper Rule 7.1 Statement (whose factual assertions are adequately supported by citations to the record),[57] and Plaintiff has failed to file a proper Rule 7.1 Response.[58]   Under the circumstances of this case (which I have described above), I decline to perform an independent review of the record to find proof of a factual dispute.

III.   **ANALYSIS**

    A.   **Whether Plaintiff Has Failed to Establish (or Even State) a First Amendment Claim**

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.[59]   Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[60]   Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[61]   As the Second Circuit has noted,

---

[57]      (Dkt. No. 43, Part 2 [Def.'s Rule 7.1 Statement].)

[58]      (Dkt. No. 45 [Plf.'s "Affidavit in Opposition to Defendant's Unlawful and Unjust Application For Summary Judgment," which does not admit and/or deny each of Defendant's factual assertions in matching numbered paragraphs, and which does not even contain citations to the record where any alleged factual issues arise, with a few exceptions].)

[59]      *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

[60]      *See Gill*, 389 F.3d at 381-383.

[61]      *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

> [t]his is true for several reasons.  First, claims of retaliation are
> difficult to dispose of on the pleadings because they involve questions
> of intent and are therefore easily fabricated.  Second, prisoners' claims
> of retaliation pose a substantial risk of unwarranted judicial intrusion
> into matters of general prison administration.  This is so because
> virtually any adverse action taken against a prisoner by a prison
> official--even those otherwise not rising to the level of a constitutional
> violation--can be characterized as a constitutionally proscribed
> retaliatory act.[62]

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.[63]   Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[64]

Here, I find that Plaintiff does not in his Amended Complaint allege any facts from which a reasonable fact-finder could conclude that Defendant violated Plaintiff's First Amendment rights.  As a threshold matter, Plaintiff does not allege facts indicating that he was, during his defense of himself in his disciplinary hearing, engaging in conduct that was protected under the

---

[62]   *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[63]   *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[64]   *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

First Amendment.  In any event, Plaintiff does not allege facts indicating that any such protected conduct was a substantial or motivating factor in Defendant's decision to find Plaintiff guilty of one of the two disciplinary charges against him.  Rather, Plaintiff's sole allegation of Defendant's retaliatory intent is wholly conclusory.[65]  As a result, I conclude that Plaintiff's retaliation claim should be dismissed *sua sponte* for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

In the alternative, I conclude that this claim should be dismissed for the reasons stated by Defendant in his memorandum of law, i.e., Plaintiff's failure to exhaust his administrative remedies with regard to this claim, and his failure to adduce any evidence (only conclusory allegations) in support of this claim.  (Dkt. No. 43, Part 23, at 5–11, 16-19 [Def.'s Mem. of Law].)  While my conclusion needs no further support, I note that it is further supported by the fact that, by failing to respond to Defendant's arguments in a memorandum of law (or even his so-called "Affidavit"), Plaintiff has "consented" to that argument under Local Rule of Practice 7.1(b)(3).[66]

---

[65]     (Dkt. No. 6, ¶ 6, subparagraph "26" [Plf.'s Compl., alleging "So, . . . [Defendant Garcia] became angry at Plaintiff's testimony about the retaliation of Officer Flanders on the Tier III disciplinary record and made a decision to retaliate against Plaintiff for exercising his constitutional and civil rights by unlawfully and unjustly finding Plaintiff guilty of refusing a direct order to return to work . . . ."].)

[66]     *See Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); N.D.N.Y. L.R. 7.1(a) (requiring

**B.      Whether Plaintiff Has Failed to State a Fifth Amendment Claim**

The Fifth Amendment to the United States Constitution provides, in pertinent part, that

"[n]o person shall . . . in any criminal case . . . be deprived of life, liberty, or property, without

due process of law."[67]  In his Amended Complaint, Plaintiff alleges that Defendant violated his

due process rights under the Fifth Amendment.  (Dkt. No. 6, "Preliminary Statement,"

"Jurisdiction of District Court" [Plf.'s Compl.].)

A fatal problem exists with Plaintiff's claim.  No independent Fifth Amendment claim

exists with respect to due process violations allegedly occurring at a prison disciplinary

proceeding (other than a possible claim concerning the privilege against self-incrimination), for

two reasons: (1) such a proceeding is not a "criminal" proceeding under the Fifth Amendment;[68]

and (2) "[t]he Due Process Clause of the Fifth Amendment is plainly inapplicable to . . . state

actors"[69] such as those named in Plaintiff's Amended Complaint.

---

opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf.* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

[67]      U.S. Const. amend V.

[68]      *See* U.S. Const. amend V  ("No person shall . . . *in any criminal case* . . . be deprived of life, liberty, or property, without due process of law.") [emphasis added]; *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1975) ("Prison disciplinary hearings are not criminal proceedings . . . ."); *cf. Lisbon v. Goord*, 02-CV-3567, 2003 U.S. Dist. LEXIS 7135, at *6 (S.D.N.Y. Apr. 28, 2003) ("[T]he double jeopardy clause [of the Fifth Amendment] is limited to criminal proceedings and thus it does not pertain to prison disciplinary hearings.") [internal quotations and citations omitted].

[69]      *McCarthy v. Yost*, 01-CV-9590, 2003 U.S. Dist. LEXIS 3307, at *8, n.4 (S.D.N.Y. Feb. 14, 2003) (citing *Bartkus v. Illinois*, 359 U.S. 121, 124 [1959]); *see also Shabazz*

Rather, it is the Fourteenth Amendment that applies to such due process violations allegedly occurring at Plaintiff's prison disciplinary hearing.[70]  With respect to the Fourteenth Amendment due process claim that Plaintiff is asserting in this action, I have analyzed that claim below in Part III.F. of this Report-Recommendation.

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Fifth Amendment claim for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### C.     Whether Plaintiff Has Failed to State a Sixth Amendment Claim

The Sixth Amendment to the United States Constitution provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . [and] to have compulsory process for obtaining the witnesses in his favor."[71]  Although Plaintiff does not explicitly invoke the Sixth Amendment in his Amended Complaint, he does allege that (1) Defendant refused to permit Plaintiff to "call[,] . . . cross-examine or confront" Sergeant Allen as a witness,[72] and (2) Defendant denied Plaintiff's request

---

*v. Scully*, 91-CV-6319, 1994 U.S. Dist. LEXIS 6630, at *9 (S.D.N.Y. May 19, 1994) ("[T]he Fifth Amendment Due Process provision is inapplicable to state officials . . . .").

[70]        *See*, *e.g.*, *Robinson v. Vaughn*, 92-CV-7048, 1993 U.S. Dist. LEXIS 15566, at *17 (E.D. Pa. Nov. 1, 1993) ("The rights secured to individuals by the Fifth Amendment are generally applicable against the states only through the Fourteenth Amendment.  The court's consideration of [the prisoner plaintiff's] allegations that the defendants' actions toward him [in the prison disciplinary hearing] violated due process is subsumed within its Fourteenth Amendment analysis of his claims.").

[71]        U.S. Const. amend VI.

[72]        (Dkt. No. 6, ¶ 6, subparagraphs "5" and "7" [Plf.'s Compl.].)

20

to call as defense witnesses Inmates Horsely and Morales.[73]

The problem with any such claim, of course, is that the Sixth Amendment's guarantees apply only to criminal prosecutions,[74] and prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment.[75]  Rather, the denial of the rights in question is properly considered as a Fourteenth Amendment procedural due process claim,[76] which is considered below in Part III.F. of this Report-Recommendation.

As a result, I recommend that the Court *sua sponte* dismiss any Sixth Amendment claim asserted by Plaintiff for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### D.     Whether Plaintiff Has Failed to State an Eighth Amendment Claim

Generally, to prevail on an Eighth Amendment claim, a prisoner must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that Defendant acted with *deliberate indifference* to Plaintiff's health or safety.[77]  In his Amended Complaint, Plaintiff alleges that Defendant violated his rights under the Eighth Amendment.  (Dkt. No. 6, "Preliminary Statement," "Jurisdiction of District Court" [Plf.'s

---

[73]     (Dkt. No. 6, ¶ 6, subparagraphs "5," "8," "10," "11," "14," "15," and "16" [Plf.'s Compl.].)

[74]     *See Kirby v. Illinois*, 406 U.S. 682, 690 (1972).

[75]     *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[76]     *See Urbanski v. Horn*, 97-CV-4647, 1988 U.S. Dist. LEXIS 15031, at *23-34 (E.D. Pa. Sept. 25, 1998).

[77]     *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

Compl.].)  However, Plaintiff does not allege any facts from which a reasonable fact-finder could possibly conclude that Defendant violated the Eighth Amendment.  Indeed, rather than alleging that he experienced particularly harsh conditions in S.H.U. or that his health condition somehow deteriorated during his confinement in S.H.U., Plaintiff appears to allege that Defendant violated the Eighth Amendment by intentionally inflicting emotional distress on Plaintiff through "the unlawful and illegal use of Bail to punish" Plaintiff.  (Dkt. No. 6, "Jurisdiction of District Court" [Plf.'s Compl.].)  This allegation is so nonsensical as to be frivolous.

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Eighth Amendment claim for failure to state a claim upon which relief may be granted  under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### E.    Whether Plaintiff Has Failed to State a Thirteenth Amendment Claim

The Thirteenth Amendment to the United States Constitution provides, in pertinent part, that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States . . . ."[78]  In his Amended Complaint, Plaintiff alleges that Defendant violated his rights under the Thirteenth Amendment. (Dkt. No. 6, "Preliminary Statement," "Jurisdiction of District Court" [Plf.'s Compl.].)

It is unclear whether Plaintiff is alleging that his "involuntary servitude" consisted of his having to work on a road crew in prison, or his having to serve a sentence in S.H.U. as a result of a disciplinary conviction.  If it is the former, he has offered no allegation that he was not "duly convicted" of the crime for which he was imprisoned (grand larceny), or that Defendant in any

---

[78]        U.S. Const. amend VIII.

way caused Plaintiff to work on the road crew.[79]  If Plaintiff's claim is the latter, then Plaintiff is

advised that a sentence in the S.H.U. of a correctional facility in which one has already been

imprisoned (as a result of his having been duly convicted) does not qualify as "servitude" under

the Thirteenth Amendment (which term, incidentally, is construed by the courts as something

akin to slavery).[80]  In addition, because any such Thirteenth Amendment claim is premised on the

allegation that Plaintiff was not "duly" found guilty of the disciplinary charge of refusing to obey

a direct order, such a claim is in reality a due process claim, which is addressed below in Part

III.F. of this Report-Recommendation.

        As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Thirteenth

Amendment claim for failure to state a claim upon which relief may be granted  under 28 U.S.C.

§ 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

> **F.    Whether Plaintiff Has Failed to Establish (or Even State) a Fourteenth
> Amendment Claim**

        Defendant advances several arguments in favor of dismissal of Plaintiff's Fourteenth

Amendment claim.  One of these arguments is that the 76 days that Plaintiff spent in S.H.U. did

not create a liberty interest that was protected by the Fourteenth Amendment.[81]  I accept this

---

[79]    *See also Ali v. Johnson*, 259 F.3d 317, 317 (5th Cir. 2001) ("[I]nmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work.").

[80]    *See Urbanski*, 1998 U.S. Dist. LEXIS 15031, at *8-9, 24-25 (finding that prisoner's Thirteenth Amendment claim, which was based in part on the "inadequate disciplinary procedures" to which the prisoner was subjected at a disciplinary hearing, fails as a matter of law).

[81]    (Dkt. No. 43, Part 23 at 4-5 [Def.'s Mem. of Law].)

argument for the reasons stated by Defendant in his memorandum of law.[82]  As a result, I conclude that Plaintiff has failed to establish (or even state) a Fourteenth Amendment claim. While my finding needs no further support, I note that it is further supported by the fact that, by failing to respond to Defendant's arguments in a memorandum of law (or even his so-called "Affidavit"), Plaintiff has "consented" to that argument under Local Rule of Practice 7.1(b)(3).[83]

As a result, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment claim against Defendant due to Plaintiff's failure to adduce any evidence (or allege any facts) indicating that his sentence served in S.H.U. created a liberty interest that was protected by the Fourteenth Amendment.  Because I find that adequate grounds exist upon which to base a recommendation of dismissal of Plaintiff's Fourteenth Amendment claim, I need not, and do not, reach the merits of Defendant's alternative arguments that (1) Plaintiff's Fourteenth Amendment claim should be dismissed because the Tier III disciplinary decision has never been reversed,[84] and (2) Plaintiff has failed to adduce any evidence in support of his claim that he was deprived of the process he was due under the Fourteenth Amendment during his disciplinary hearing, except to make two points.[85]  First, Defendant correctly recites the law with regard to what process a prisoner is due during a prison disciplinary hearing.[86]  Second, Defendant has adduced sufficient evidence to support his factual assertion that Plaintiff was afforded all the process that he was due under the

---

[82]     (*Id.*)

[83]     *See*, *supra*, note 66 of this Report-Recommendation.

[84]     (Dkt. No. 43, Part 23 at 2-3 [Def.'s Mem. of Law].)

[85]     (Dkt. No. 43, Part 23 at 11-16 [Def.'s Mem. of Law].)

[86]     (Dkt. No. 43, Part 23 at 11-12 [Def.'s Mem. of Law].)

Fourteenth Amendment during his disciplinary hearing;[87] and Plaintiff has, particularly by failing to file an adequate Rule 7.1 Response, failed to specifically controvert that factual assertion sufficiently to create an issue of fact for purposes of Rule 56.[88]

### G. Whether, in the Alternative, Plaintiff's Amended Complaint Should Be Dismissed Because Defendant Is Protected by Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[89]  In determining whether a particular right was *clearly established*, courts in this Circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.[90]

Regarding the issue of whether *a reasonable person would have known* he was violating such a clearly established right, this "objective reasonableness"[91] test is met if "officers of reasonable

---

[87]     (Dkt. No. 43, Part 2, ¶¶ 22-64 [Def.'s Rule 7.1 Statement]; *see also* Dkt. No. 43, Part 23 at 13-6 [Def.'s Mem. of Law].)

[88]     *See*, *supra*, Part II.C. & note 58 of this Report-Recommendation.

[89]     *Williams v. Smith*, 781 F.2d 319,  322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).

[90]     *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992); *see also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

[91]     *See Anderson v. Creighton*, 107 S. Ct. 3034, 3038 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457

competence could disagree on [the legality of defendant's actions]."[92]   As the Supreme Court

explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.[93]

Furthermore, courts in the Second Circuit recognize that "the use of an 'objective

reasonableness' standard permits qualified immunity claims to be decided as a matter of law."[94]

Here, I find that Defendant is protected by qualified immunity for the reasons stated in his

memorandum of law. (Dkt. No. 43, Part 23, at 19-21 [Def.'s Mem. of Law].)  While my finding

needs no further support, I note that it is further supported by the fact that, by failing to respond

to Defendant's arguments in a memorandum of law (or even his so-called "Affidavit"), Plaintiff

has "consented" to that argument under Local Rule of Practice 7.1(b)(3).[95]

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims

against Defendant based on qualified immunity.

---

U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

[92]   *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional
Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F.
Supp. 204, 211 (S.D.N.Y. 1996).

[93]   *Malley*, 475 U.S. at 341.

[94]   *Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir.
1992] [citing Supreme Court cases]).

[95]   *See*, *supra*, note 66 of this Report-Recommendation.

**H.      Whether, in the Alternative, Plaintiff's Amended Complaint Should Be Dismissed Without Prejudice to Refiling Through a Paid Complaint, Because Plaintiff's *In Forma Pauperis* Status Was Improvidently Granted Due to His Lack of Candor with the Court**

Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> [i]n no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it. . . fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding.  In other words, specifically, federal district courts have the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, where it discovers that the status was improvidently granted.[96]  I note that, less than three years ago, the United States District Court for the Eastern District of New York recognized and exercised this authority in two of Plaintiff's actions, revoking Plaintiff's *in forma pauperis* status and dismissing his complaint "without prejudice to refiling through a paid complaint" well into the pendency of the proceedings.[97]

---

[96]      *See Gill v. Pidlypchak*, 02-CV-1460, 2006 WL 3751340, at *5 (N.D.N.Y. Dec. 19, 2006) (Scullin, J.); *Polanco v. Burge*, 05-CV-0651, 2006 WL 2806574, at *2 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe*, 118 F. Supp.2d 172, 174 (D. Conn. 2000); *McFadden v. Parpan*, 16 F. Supp.2d 246, 247 (E.D.N.Y. 1998).

[97]      *See Rolle v. Nassau County Correctional Facility*, 01-CV-2414, Order, at 2 (E.D.N.Y. filed Nov. 17, 2004) ("A court may revoke the *in forma pauperis* status it previously bestowed upon a [plaintiff], where that status is later determined to be 'improvident'") [citation omitted], *accord, Rolle v. Kurtzrock*, 03-CV-1789 Order (E.D.N.Y. filed June 17, 2004).

Here, the Court granted Plaintiff's request to proceed *in forma pauperis* on April 30,

2004. (Dkt. No. 4 at 6.)  It appears that, when the Court granted this request, the Court was

relying on Plaintiff's sworn allegation in his Complaint that, as of March 22, 2004 (the date of

signing of the Complaint), he had filed only one other lawsuit in state or federal court relating to

his imprisonment.[98]  The sworn allegation was inaccurate.  As of March 22, 2004, Plaintiff had

filed at least ***four*** other lawsuits in state or federal court relating to his imprisonment.[99]

Plaintiff's misrepresentation was material in that, had the Court known of these other lawsuits,

the Court probably would have reviewed the docket sheets of these matters, and learned of the

Plaintiff's considerable litigation experience and his accumulation of strikes.  Specifically, as of

the date of April 30, 2004 (the date of decision of the Court's Order granting Plaintiff's request

to proceed *in forma pauperis*), Plaintiff had received at least ***six*** "strikes" for purposes of 28

U.S.C. § 1915(g).[100]  I note that, since April 30, 2004, the U.S. District Court for the Eastern

---

[98]     (Dkt. No. 1, ¶ 5.b. [Plf.'s Verified Compl., swearing that the one other lawsuit he had filed in state or federal court relating to his imprisonment was *Rolle v. Bolster*, 03-CV-1529].)

[99]     *See Rolle v. Nassau County Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (habeas corpus petition); *Rolle v. Meenan*, 01-CV-2719 (E.D.N.Y.) (prisoner civil rights action); *Rolle v. Cassidy*, 01-CV-3172 (E.D.N.Y.) (prisoner civil rights action); *Rolle v. McKinney*, 786 N.Y.S.2d 815 (N.Y. 2004) (dismissing appeal from decision in civil action by Plaintiff against the superintendent of a NYS DOCS correctional facility).

[100]    *See Rolle v. DeRiggi*, 00-CV-3872, Order (E.D.N.Y. filed Jan. 25, 2001) (dismissing Plaintiff's complaint for failure to state a claim); *Rolle v. N. County*, 99-CV-2587, Order (E.D.N.Y. filed March 8, 2002) (dismissing Plaintiff's complaint for failure to state a claim); *Rolle v. Honorof*, 01-CV-6667, Order (E.D.N.Y. filed March 11, 2002) (dismissing Plaintiff's complaint for failure to state a claim); *Rolle v. Ort*, 02-CV-4171, Order (E.D.N.Y. filed Aug. 29, 2003) (dismissing Plaintiff's complaint for failure to state a claim); *Rolle v. Ruskin*, 02-CV-3829, Order (E.D.N.Y. filed Sept. 3, 2003) (dismissing Plaintiff's complaint for failure to state a claim); *Rolle v. Carter*, 03-CV-2039, Order (E.D.N.Y. filed Nov. 26, 2003) (dismissing Plaintiff's complaint for failure to state a claim).  I note that, at the time Plaintiff

District of New York has repeatedly recognized that Plaintiff has accumulated at least three strikes.[101]  Finally, I find that nothing on the face of the Amended Complaint indicates that Plaintiff is in "imminent danger of serious physical injury."[102]

As a result, I recommend that, in the alternative, the Court should revoke Plaintiff's *in forma pauperis* status and dismiss Plaintiff's Amended Complaint without prejudice to refiling through a paid complaint.  In the alternative, I base this recommendation on the Court's inherent ability to manage its docket through sanctioning abusive litigation practices such as making material misrepresentations or omissions to the Court.

---

filed each of these actions, he was "incarcerated or detained in . . . [a] facility" in New York State.  *See*, *e.g.*, *Rolle v. Nassau County Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (habeas corpus petition filed on 4/20/01); *Rolle v. Meenan*, 01-CV-2719 (E.D.N.Y.) (prisoner civil rights action filed on 5/1/01); *Rolle v. Cassidy*, 01-CV-3172 (E.D.N.Y.) (prisoner civil rights action filed on 5/18/01).

[101]    *See Rolle v. Nassau County Correctional Facility*, 01-CV-2414 (E.D.N.Y.) (plaintiff's *in forma pauperis* status rescinded on 11/17/04 due to three strikes rule); *Rolle v. Ort*, 02-CV-4171 (E.D.N.Y.) (plaintiff's request to proceed *in forma pauperis* denied on 6/17/04 because of the three strikes rule); *Rolle v. LaPera*, 03-CV-1540 (E.D.N.Y.) (plaintiff's request to proceed *in forma pauperis* denied on 7/26/04 because of the three strikes rule); *Rolle v. Kurtzrock*, 03-CV-1789 (E.D.N.Y.) (plaintiff's *in forma pauperis* status rescinded on 6/17/04 due to three strikes rule); *Rolle v. Berkowitz*, 03-CV-3535 (E.D.N.Y.) (plaintiff's request to proceed *in forma pauperis* denied on 6/17/04 because of the three strikes rule).

[102]    28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 561 (2d Cir. 2002) (examining plaintiff's allegations in order to determine if plaintiff's case fell within the exception to the three strike's rule for prisoners in "imminent danger of serious physical injury").

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 43) be

**GRANTED**, and that Plaintiff's Amended Complaint (Dkt. No. 6) be **DISMISSED** in its

entirety **WITH PREJUDICE**; and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's *in forma pauperis* status be

revoked as having been improvidently granted due to Plaintiff's lack of candor with the Court,

and that his Amended Complaint be dismissed without prejudice to refiling through a paid

complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 29, 2007
        Syracuse, New York


George H. Lowe
United States Magistrate Judge

30